IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE THOMAS J. AQUILINO, JR., SENIOR JUDGE

| | |
|---|---|
| NANJING KAYLANG CO., LTD., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 24-00045 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record filed by the plaintiff, Nanjing Kaylang Co., Ltd. (Kaylang). Kaylang challenges the Department of Commerce's final scope ruling that certain cabinets and vanities made from phragmites that Kaylang manufactures in its facilities in the People's Republic of China (China) are subject to the antidumping and countervailing duty orders covering wooden cabinets and vanities and components thereof (wooden cabinets) from China. *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020) (AD Order), and *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of*

*China: Countervailing Duty Order*, 85 Fed. Reg. 22, 134 (April 21, 2020) (CVD Order) (collectively, Orders). Commerce's determination is supported by substantial evidence and is in accordance with law. Accordingly, we respectfully request that the Court deny Kaylang's motion, sustain Commerce's determination, and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

I.      Administrative Determination Under Review

The administrative determination under review is *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Kaylang Phragmites Final Scope Ruling* (January 12, 2024) (Final Scope Ruling) (P.D. 30).

II.     Issue Presented for Review

Whether Commerce's final scope ruling, finding that certain cabinets and vanities made from phragmites are included in the scope of the orders covering wooden cabinets from China, is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

I.      The Antidumping and Countervailing Duty Orders

Commerce has published orders covering wooden cabinets from China. *See* AD Order, 85 Fed. Reg. 22,126; CVD Order, 85 Fed. Reg. 22, 134. The scope of the orders:

> consists of wooden cabinets and vanities that are for permanent installation (including floor mounted, wall mounted, ceiling hung or by attachment of plumbing), and wooden components thereof. Wooden cabinets and vanities and wooden components are made substantially of wood products, including solid wood and engineered wood products (including those made from wood particles, fibers, or other wooden materials such as plywood, strand board, block board, particle board, or fiberboard), or bamboo. Wooden cabinets and vanities consist of a cabinet box (which typically includes a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves) and may or may not include a frame, door, drawers and/or shelves. Subject merchandise includes wooden cabinets and vanities with or without wood veneers, wood, paper or other overlays, or laminates, with or without non-wood components or trim such as metal,

> marble, glass, plastic, or other resins, whether or not surface finished or unfinished, and whether or not completed.

AD Order, 85 Fed. Reg. at 22,132; CVD Order, 85 Fed. Reg. at 22,135.

II. The Scope Proceeding

On February 23, 2023, Commerce received a scope ruling application from Kaylang, requesting a ruling on whether cabinets made from phragmites are subject to the scope of the orders covering wooden cabinets from China. Kaylang's Letter, "Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China; Request for Scope Ruling," (February 23, 2024) (P.R. 1) (Scope Application). Phragmites are a species of common reed, often cut into specific lengths, dried, ground into particles, mixed with glue, flattened into a sheet and pressed into layers to make phragmite composite board, which is then made into furniture using traditional methods. Final Scope Ruling at 5. In its scope ruling application, Kaylang asserted that their merchandise was not covered by the orders because their cabinets are not made of wood, and rather made from a "vegetable combined with a plastic." Scope Application at 6.

Commerce initiated the inquiry on March 28, 2023 and invited interested parties to comment. *See* Commerce's Memo, "Deemed Initiation of Scope Inquiry," (March 28, 2023) (P.R. 4). On April 27, 2023, Commerce received comments from the American Kitchen Cabinet Alliance, arguing that Kaylang's phragmites products fall within the scope of the order because they are made from the fibers of phragmites, and are therefore fiberboards, which are classified as engineered wood products. *See* Letter from American Kitchen Cabinet Alliance, "Response to Request for Scope Ruling by Nanjing Kaylang Co., Ltd." (April 27, 2023) (P.R. 8) (AKCA Response). Kaylang responded to these comments on May 11, 2023, arguing that fibers must come from wood for fiberboard to be engineered wood products, and that their products come

3

from phragmites which are not wood, and are therefore outside of the scope. *See* Kaylang's Letter, "Response to Comments of American Kitchen Cabinet Alliance" (May 11, 2023) (P.R. 12).

On January 12, 2024, pursuant to 19 C.F.R. §351.225(h), Commerce published its final scope ruling, finding that cabinets and vanities made from phragmites are subject to the orders. Commerce examined the language of the orders, as well as secondary interpretive sources such as prior rulings of U.S. Customs and Border Protection (Customs), explanatory notes of the Harmonized Tariff System of the United States (HTSUS) and World Customs Organization (WCO), and other relevant record evidence regarding production processes pursuant to 19 C.F.R. §351.225(k)(1)(ii). *See* Final Scope Ruling at 9 (citing AKCA Response at 6-7 and Kaylang's Letter, "Supplemental Questionnaire" (July 5, 2023) (P.R. 17) (Kaylang Supplemental)).

After examination of these secondary sources, Commerce found that phragmites are a member of a family of grasses consistently found to be "wood articles" and "of a woody nature." *See* Final Scope Ruling at 9-10.  Furthermore, Commerce found that the production process phragmites undergo to create particleboard, which is then assembled into wooden cabinets, is nearly identical to the production process of particleboard falling within the scope under "engineered wood products." *Id.*  Therefore, Commerce determined that wooden cabinets made from phragmites are subject merchandise covered by the orders, and that a further analysis under 19 C.F.R. §351.225(k)(2) or (k)(3) was not warranted. *Id.* at 10.

## SUMMARY OF ARGUMENT

Commerce lawfully determined, in accordance with 19 C.F.R. §351.225(k)(1), that Kaylang's cabinets and vanities made from phragmites are within the scope of the orders. Commerce has discretion to consider primary and secondary sources to interpret the plain

4

language of the orders' scope language.  Here, through interpreting the plain language of the orders as well as prior Customs rulings and HTSUS and WCO explanatory notes, Commerce reasonably concluded that Kaylang's cabinets and vanities made from phragmites are covered by the orders.  Therefore, Commerce's Final Scope Ruling is supported by substantial evidence and in accordance with law.

## ARGUMENT

### I. Standard of Review

The Court may review a determination by Commerce "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. §1516a(a)(2)(B)(vi); *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017). This Court must affirm, "a Commerce scope ruling that is supported by 'substantial evidence on the record' and otherwise 'in accordance with law.'" *Meridian Prods.*, 851 F.3d at 1381 (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) (internal quotation marks omitted). Because Commerce's determination is presumed to be correct, the plaintiff bears the burden of demonstrating reversible error. 28 U.S.C. § 2639(a)(1).

### II. Legal Framework for Scope Rulings

When Commerce publishes an AD or CVD order, it defines the scope of the order and "includes a description of the subject merchandise, in such detail as {Commerce} deems necessary." 19 U.S.C. §1673e(a)(2).  Commerce is often called upon to determine whether a certain product is included within the scope of the AD or CVD order because it must write scope

language in general terms.  *Meridian Prods.*, 851 F.3d at 1379 (citations omitted).  When Commerce confronts such a question, it follows the analytical framework and procedures set forth in its regulations.  19 C.F.R. § 351.225; *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015) ("There is no specific statutory provision governing the interpretation of the scope of {AD} or {CVD} orders").

In 2021, Commerce amended its regulation for answering scope questions.  *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,* 86 Fed. Reg. 52,300, 52,322-52,323 (Sept. 20, 2021); 19 C.F.R. § 351.225(k) (2022).[1]  Pursuant to the amended regulation, Commerce may determine whether a product is within the scope of an order by relying on the scope language alone, if such language is dispositive.  19 C.F.R. § 351.225(k)(1).  Commerce also has the discretion to consider the additional primary and secondary sources listed in section 351.225(k)(1).  The primary (k)(1) sources include descriptions from the petition and investigation, prior Commerce determinations relating to the same order or other orders with similar language, or prior ITC determinations relating to the same order.  19 C.F.R. § 351.225(k)(1)(i).  Secondary (k)(1) sources include other Commerce or Commission determinations, industry usage, and dictionaries.  19 C.F.R. § 351.225(k)(1)(ii)).  To the extent such secondary sources conflict with the primary sources, however, the primary sources "will normally control."  *Id.*

---

[1] Before Commerce amended the regulations in 2021, various Federal Circuit cases reflected differing views on "whether the sources under the current § 351.225(k)(1) are used to interpret the 'plain meaning' of the text of the scope, or whether the plain meaning analysis comes first{.}" *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,322-52,323 (Sept. 20, 2021) (Scope Regulation Revision) (citing, *e.g.*, *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 918 (Fed. Cir. 2014) (*Fedmet Res. Corp.*); *OMG, Inc. v. United States*, 972 F.3d 1358, 1363-66 (Fed. Cir. 2020)).  Commerce's amended regulation clarifies the appropriate analysis.  *See* 19 C.F.R. § 351.225(k) (2022).

If Commerce determines that descriptions of the merchandise contained in the (k)(1) sources are dispositive, Commerce issues a final scope ruling deciding whether the product falls within the order's scope. *See* 19 C.F.R. § 351.225(e); *see also Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005). The (k)(1) sources are "dispositive" when they "definitively answer the scope question." *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).

Finally, only if the (k)(1) sources are not dispositive, Commerce will consider the five additional factors set forth in section 351.225(k)(2), known as the (k)(2) sources. 19 C.F.R. § 351.225(k)(2); *Fedmet Res. Corp.*, 755 F.3d at 919-22. These factors include: "(A) the physical characteristics of the merchandise; (B) expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2)(i).

III.  Commerce's Determination that Wooden Cabinets Made from Phragmites are Subject to the Orders is Supported by Substantial Evidence and In Accordance with Law

Commerce's final scope ruling complied with the relevant legal framework and is supported by substantial evidence. In particular, Commerce began with an examination of the language of the orders, considering the primary and secondary interpretive sources in 19 C.F.R. § 351.225(k)(1)(i) and (ii) ("(k)(1) interpretive sources"). Commerce examined the language of the orders, but found that it could not, based on the plain language alone, determine whether "engineered wood products" would include cabinets and vanities made from fibers and particles other than wood, such as phragmites. *See* Final Scope Ruling at 8-9. Given that the plain language alone was not dispositive, Commerce appropriately relied on the (k)(1) interpretive sources to determine whether Kaylang's products fall under the scope as "engineered wood products."

7

When analyzing the scope language using the (k)(1) interpretive sources, Commerce considered the explanatory notes to the HTSUS and the WCO. *See* 19 C.F.R. § 351.225(k)(1)(ii); *Lemans Corp. v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011) ("{T}he World Customs Organization's Explanatory Notes that accompany each Chapter of the HTSUS . . . are 'persuasive' and are 'generally indicative' of the proper interpretation of the tariff provision." c*iting Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008)). The explanatory notes characterized phragmites as part of the "poaceae" family of grasses, which are considered materials of a woody nature and classified as wood articles. Final Scope Ruling at 9 (citing AKCA Response at 11 and Exhibit 1). Commerce also relied on Customs rulings pursuant to 19 C.F.R. § 351.225(k)(1)(ii). *See Tak Fat*, 396 F.3d at 1386 ("{I}t is permissible {for Commerce} to refer to the Customs rulings on the HTS to find precision in the reach of the scope order."). In analyzing prior Customs rulings, Commerce found that particle boards processed from straw and sorghum strips, materials that are not wood but are also part of the "poaceae" family of grasses, are classified as wood articles. Final Scope Ruling at 9 (citing AKCA Response at Exhibit 13). Therefore, Commerce appropriately determined that merchandise made from phragmites, a non-wood article also in the "poaceae" family of grasses, is subject to the scope of the orders.

Commerce also compared the production processes of Kaylang's phragmite composite board and particle board, which is included in the scope as "engineered wood products." *See* 19 C.F.R. § 351.225(k)(1)(ii). Kaylang's process of manufacturing phragmite composite board is nearly identical to the process of manufacturing particle board from phragmites. Final Scope Ruling at 9. Relevant record evidence submitted by the petitioner shows that in both, the phragmites are cut to a certain size, crushed into fine particles, mixed with adhesives, and pressed into multi-layer boards. *Id.* (citing AKCA Response at Exhibit 3 and Kaylang

Supplemental at Exhibit S-1). Based on this relevant evidence, Commerce found that Kaylang's cabinets and vanities made from phragmite composite board are within the scope of the orders.

IV. Commerce Lawfully Exercised its Discretion to Rely on Secondary Interpretive Sources Under 19 C.F.R. § 351.225(k)(1)(ii) to Interpret the Plain Language of the Scope

Kaylang does not challenge Commerce's analysis that led it to find its product covered by the orders. Instead, Kaylang's argument is premised entirely on the mistaken belief that Commerce is bound to make its determination based on the "plain language" of the scope without regard for any other interpretive sources. This argument finds no support in Commerce's regulations. Commerce's regulation states that Commerce "may" use the (k)(1) interpretive sources, regardless of the ambiguity of the scope language, to interpret the scope language of the orders. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Sept. 20, 2021) ("{I}t is our belief that the traditional (k)(1) sources were never intended by Commerce to be separate from the initial analysis of the scope language, but were instead intended to be interpretive tools that could be considered by Commerce, at its discretion and under consideration of the arguments on the administrative record, to determine the meaning of the scope of the order.") Thus, Commerce acted consistently with its regulations by evaluating the (k)(1) interpretive sources to determine the scope of the orders.

In any event, Kaylang is wrong that the orders unambiguously cover only "wood" products. Kaylang argues that because Commerce concedes that phragmites are not wood, Commerce must conclude that its products are outside the scope of the orders. Kaylang's Brief at 6. However, the orders cover products manufactured from "solid wood and engineered wood products (including those made from wood particles, fibers, or other wooden materials such as

9

plywood, strand board, block board, particle board, or fiberboard), or bamboo." *See* Final Scope Ruling at 2. "Engineered wood products" and "bamboo," are not solid wood products. And while the orders provide examples of "engineered wood products" in a parenthetical, the scope language clarifies that "engineered wood products" merely "include" those examples; that parenthetical is not an exhaustive list of what qualifies as "engineered wood products." AD Order, 85 Fed. Reg. at 22,132; CVD Order, 85 Fed. Reg. at 22,135. Therefore, Commerce's determination that phragmites are not "wood" does not end its inquiry. Commerce reasonably found that the scope language does not clearly state whether "engineered wood products" includes cabinets and vanities made from fibers and particles other than wood, such as phragmites. *See* Final Scope Ruling at 9. As a result, Commerce exercised its discretion to consider the (k)(1) interpretive sources to determine the issue.

   Furthermore, Kaylang's invocation of the "*expresio unius exclusion alterius*" ("the inclusion of one thing implies the exclusion of another") is irrelevant because Commerce found Kaylang's merchandise to be covered by the express language of the scope as "engineered wood products." *See* Kaylang Br. at 8; Final Scope Ruling at 9-10. Kaylang misrepresents the scope language by claiming that it excludes cabinets and vanities made from phragmites because it "expressly identifies Wood and Bamboo and does not identify any other material." Kaylang's Brief at 8. The scope language includes several other materials, most notably "engineered wood products." As discussed, the scope language includes non-exhaustive examples of "engineered wood products" such as "wood particles, fibers, or other wooden materials," and Commerce lawfully determined that phragmites are "engineered wood products" through its interpretation of the (k)(1) interpretative sources. Final Scope Ruling at 2, 9-10. As such, the inclusion of

"engineered wood products" in the scope foreclose an interpretation of this issue through the *expresio unius* canon.

## CONCLUSION

We respectfully request that the Court deny the plaintiff's motion for judgment upon the administrative record and enter judgment for the United States.

        Respectfully submitted,

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General

        /s/ Patricia M. McCarthy
        PATRICIA M. MCCARTHY
        Director

        /s/ Tara K. Hogan
        TARA K. HOGAN
        Assistant Director

| OF COUNSEL: | /s/ Ashley Akers |
|---|---|
| HEATHER HOLMAN | ASHLEY AKERS |
| Attorney | Trial Attorney |
| Department of Commerce | U.S. Department of Justice |
| Office of the Chief Counsel | Civil Division |
|   for Trade Enforcement | Commercial Litigation Branch |
|   & Compliance | P.O. Box 480 |
| 1401 Constitution Avenue, NW | Ben Franklin Station |
| Washington, D.C. 20230 | Washington, D.C. 20044 |
| | Tel: (202) 353-0521 |
| December 6, 2024 | Attorneys for Defendant |